UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.** |
| | : | |
| v. | : | |
| | : | **Charges:** |
| **JESSE L. JACKSON, JR.,** | : | |
| | : | 18 U.S.C. § 371 (Conspiracy) |
| | : | 18 U.S.C. § 1001 (False Statements) |
| | : | 18 U.S.C. § 1341 (Mail Fraud) |
| **Defendant.** | : | 18 U.S.C. § 1343 (Wire Fraud) |
| | : | |
| | : | 18 U.S.C. § 981(a)(1)(C) & |
| | : | 28 U.S.C. § 2461(c) (Criminal Forfeiture) |

## INFORMATION

The United States Attorney charges that:

### COUNT ONE - CONSPIRACY

At various times relevant to this Information:

#### Introduction

1. At all relevant times, Defendant, JESSE L. JACKSON, JR., served as a Congressman in the United States House of Representatives, representing Illinois's 2nd Congressional District. Defendant JESSE L. JACKSON, JR., maintained a home in Chicago, Illinois, within the 2nd Congressional District, and a home near the Dupont Circle and Georgetown neighborhoods of Washington, D.C.

2. From at least in or about 2008 to in or about November 2012, Co-Conspirator 1 served as a consultant to Defendant JESSE L. JACKSON, JR.'s re-election campaigns. Starting in 2011, Co-Conspirator 1 also started functioning as the campaign manager for the campaigns to re-elect Defendant JESSE L. JACKSON, JR. From in or about January 2005 to in or about November

2006, Co-Conspirator 1 served as treasurer for Defendant JESSE L. JACKSON, JR.'s re-election campaigns.

3. At all relevant times, Person A took part in preparing the forms filed by the re-election campaigns of Defendant JESSE L. JACKSON, JR. with the Federal Election Commission ("FEC"). From in or about January 2005 through in or about November 2006, Person A was the assistant treasurer for Defendant JESSE L. JACKSON, JR.'s re-election campaigns and assisted Co-Conspirator 1 in preparing the FEC filings. From in or about January 2007 through in or about June 2008, Person A officially served as the treasurer for Defendant JESSE L. JACKSON, JR.'s re-election campaigns. After June 2008, Person A ceased serving as treasurer of Defendant JESSE L. JACKSON, JR.'s re-election campaigns, but continued to assemble FEC filings for the signature of the new treasurer. From in or around June 2008 to the present, Person A was also a staff member for Defendant JESSE L. JACKSON, JR., working in his Washington, D.C. Congressional Office.

4. Person B served as the treasurer for Defendant JESSE L. JACKSON, JR.'s re-election campaigns from in or about July 2008 through in or about July 2012 and signed the forms prepared by Person A.

5. At all relevant times, Person C was a staff member for Defendant JESSE L. JACKSON, JR., working in his district office in the 2nd Congressional District.

6. At all relevant times, Person D was president and chief operating officer of an Illinois-based company.

7. At all relevant times, Person E was the owner of an Illinois-based consulting firm.

8. At all relevant times, Person F was the owner of an Alabama-based company.

9. At all relevant times, Defendant JESSE L. JACKSON, JR.'s principal campaign committee was "Jesse Jackson Jr for Congress" and, later, "Jesse Jackson, Jr. for Congress" ("the Campaign").

<u>The Conspiracy and Its Objects</u>

10. From at least in or about August 2005 through in or about July 2012 in the District of Columbia and elsewhere, the Defendant,

**JESSE L. JACKSON, JR.**

and others unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed with one another and with others to commit offenses against the United States, that is:

    a. to willfully and knowingly make and cause to be made, and use and cause to be used, in a matter within the jurisdiction of a department and agency of the United States, a false writing and document, knowing the same to contain a materially false, fictitious, and fraudulent statement, in violation of Title 18, United States Code, Section 1001;

    b. to knowingly and with intent to defraud, devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing they were false and fraudulent when made, for the purpose of executing such scheme and artifice and attempting so to do, did cause to be delivered goods by a private and commercial interstate carrier, in violation of Title 18, United States Code, Section 1341; and

    c. to knowingly and with intent to defraud, devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing they were false and fraudulent

when made, for the purpose of executing such scheme and artifice and attempting so to do, did cause to be sent and delivered interstate wire communications, in violation of Title 18, United States Code, Section 1343.

### Goal of the Conspiracy

11. The goal of the conspiracy was for Defendant JESSE L. JACKSON, JR., and Co-Conspirator 1 to enrich themselves by engaging in a conspiracy and a scheme to defraud in which they used funds donated to the Campaign for their own personal benefit.

### Manner and Means of the Conspiracy

12. Defendant JESSE L. JACKSON, JR., Co-Conspirator 1, and others used the following manner and means, among others, to accomplish the objects and goal of the conspiracy:

    a. Defendant JESSE L. JACKSON, JR., made direct expenditures from the Campaign's accounts for personal expenses, totaling approximately $57,792.83. In making these expenditures, Defendant JESSE L. JACKSON, JR., caused deliveries by private and commercial interstate carriers, and caused interstate wire communications to occur.

    b. Defendant JESSE L. JACKSON, JR., and Co-Conspirator 1 used credit cards issued to the Campaign to make purchases for personal expenses and directed that funds from the Campaign be used to pay the credit card bills for these purchases, totaling approximately $582,772.58. In making these expenditures, Defendant JESSE L. JACKSON, JR., caused deliveries by private and commercial interstate carriers, and caused interstate wire communications to occur.

c. Defendant JESSE L. JACKSON, JR., provided Co-Conspirator 1 and Person A with funds from the Campaign, totaling approximately $112,150.39, solely for the purpose of having these individuals engage in transactions that personally benefitted Defendant JESSE L. JACKSON, JR., and Co-Conspirator 1.

d. Defendant JESSE L. JACKSON, JR., and Co-Conspirator 1, in an attempt to conceal their conversion of approximately $750,000 from the Campaign for their personal benefit, willfully and knowingly made and caused to be made, false reports with the FEC, knowing these reports to contain materially false, fictitious, and fraudulent statements. Specifically, the reports failed to reflect: i) that funds from the Campaign were spent on personal expenses; and ii) that Person A was being provided with funds from the Campaign solely for the purpose of having Person A engage in transactions that personally benefitted Defendant and Co-Conspirator 1. These reports were filed with the FEC by Co-Conspirator 1, Person A, and Person B at the direction of Defendant JESSE L. JACKSON, JR. and Co-Conspirator 1.

e. Defendant JESSE L. JACKSON, JR., in an attempt to conceal his and Co-Conspirator 1's conversion of approximately $750,000 from the Campaign for their personal benefit and their receipt of approximately $28,500 in undisclosed gifts and loans, willfully and knowingly made and caused to be made, false statements to the United States House of Representatives, knowing these reports to contain materially false, fictitious, and fraudulent statements. Specifically, the reports failed to reflect: i) that funds from the Campaign were spent on personal expenses; ii) that Person A was being provided with funds from the Campaign solely for the purpose of having Person A engage in transactions that personally benefitted Defendant

JESSE L. JACKSON, JR., and Co-Conspirator 1; and iii) that Person E and Person F paid debts owed by Defendant JESSE L. JACKSON, JR., and Co-Conspirator 1.

## OVERT ACTS

13. Within the District of Columbia and elsewhere, in furtherance of the above-described conspiracy and in order to carry out the objects thereof, Defendant JESSE L. JACKSON, JR., Co-Conspirator 1, and others committed the following overt acts, among others:

*Direct Expenditure*

a. On or about July 9, 2007, Defendant JESSE L. JACKSON, JR., caused a $43,350 gold-plated, men's Rolex watch Defendant JESSE L. JACKSON, JR., purchased with Campaign funds to be shipped from Chicago, Illinois, to Defendant JESSE L. JACKSON, JR.'s Washington, D.C., address, using an interstate carrier.

*Campaign Credit Card*

b. On or about July 25, 2008, Defendant JESSE L. JACKSON, JR., caused $9,587.64 worth of children's furniture Defendant JESSE L. JACKSON, JR., purchased with Campaign funds to be shipped from New Jersey to Defendant JESSE L. JACKSON, JR.'s Washington, D.C., home, using an interstate carrier.

c. On or about November 14, 2009, Co-Conspirator 1 caused $5,150 worth of fur capes and parkas Co-Conspirator 1 purchased with Campaign funds to be shipped from Beverly Hills, California, to Co-Conspirator 1's Washington, D.C. home, using an interstate carrier.

*Funneling Funds Through A Third Party*

d. On or about March 4, 2009, Defendant JESSE L. JACKSON, JR., directed Person A to issue Person A a check for $4,000 for work that Person A had performed on behalf of the Campaign. Person A, though, had not performed work that would have entitled Person A to receive $4,000 from the Campaign on March 4, 2009. This $4,000 check was endorsed by Person A and deposited into Person A's account at a bank located within Washington, D.C. By depositing this check, Person A caused an electronic communication to be sent from Washington, D.C., to Virginia, as this communication was a standard component of clearing a check at Person A's bank.

e. On or about March 4, 2009, Person A, at Defendant JESSE L. JACKSON, JR.'s direction, issued a check for $3,500 to Defendant JESSE L. JACKSON, JR., using the funds Person A received from the Campaign.

*False FEC Filing*

f. On or about May 29, 2008, Person A, relying on information provided to Person A by Defendant JESSE L. JACKSON, JR., reported that the Campaign spent $1,553.09 on January 22, 2008, at a Chicago Museum for "room rental-fundraiser." In truth and in fact, Defendant JESSE L. JACKSON, JR., spent these funds to purchase porcelain collector's items.

*False Filing with the United States House of Representatives*

g. On or about April 25, 2011, Person F issued a check for $25,000 from a corporate account Person F controlled to pay down a balance on one of the personal credit cards of Defendant JESSE L. JACKSON, JR., and Co-Conspirator 1.

h. On or about May 15, 2012, Defendant JESSE L. JACKSON, JR., caused his financial disclosure statement to be filed with the Office of the Clerk of the United States House of Representatives. The statement failed to reflect the $25,000 payment Person F made on behalf of Defendant JESSE L. JACKSON, JR. This omission was willfully and knowingly made by Defendant JESSE L. JACKSON, JR.

14. As a result of the conspiracy described above, Defendant JESSE L. JACKSON, JR., willingly and knowingly, used approximately $750,000 from the Campaign's accounts for personal expenses that benefitted Defendant JESSE L. JACKSON, JR., and Co-Conspirator 1.

**(Conspiracy to Commit False Statements, Mail Fraud, and Wire Fraud, in violation of Title 18, United States Code, Sections 371, 1001, 1341, and 1343.)**

## FORFEITURE ALLEGATION

1. Upon conviction of the offense alleged in Count 1, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to this offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). The property subject to forfeiture includes:

a. A money judgment in the amount of $750,000; and

b. The specific property listed below:

The following items, purchased from Antiquities of Nevada:

| Item No. | Description | Purchase Date | Purchase Price |
|---|---|---|---|
| 9348 | Bruce Lee Memorabilia | 8/28/07 | $2,000 |
| 9527 | Bruce Lee Memorabilia | 8/28/07 | $2,000 |
| 12087 | Bruce Lee Memorabilia | 6/10/08 | $3,150 |

| Item No. | Description | Purchase Date | Purchase Price |
|---|---|---|---|
| 12498 | Martin Luther King, Jr. Memorabilia | 8/14/08 | $5,595 |
| 7915 | Bruce Lee Memorabilia | 8/14/08 | $2,955 |
| 12498 | Martin Luther King, Jr. Memorabilia | 9/23/08 | $5,535 |
| 12850 | Football signed by American Presidents | 2/12/09 | $5,000 |
| 14108 | Michael Jackson Memorabilia | 8/15/09 | $2,000 |
| 14110 | Michael Jackson Memorabilia | 8/15/09 | $4,600 |
| 14117 | Michael Jackson Memorabilia | 8/15/09 | $1,400 |
| 14017 | Michael Jackson Memorabilia | 8/15/09 | $2,000 |
| 14025 | Michael Jackson Memorabilia | 8/15/09 | $1,000 |
| 14106 | Michael Jackson Memorabilia | 8/15/09 | $1,200 |
| 14085 | Michael Jackson Memorabilia | 8/15/09 | $1,000 |
| 14227 | Michael Jackson Memorabilia | 8/15/09 | $1,000 |
| 558 | Michael Jackson Hat | 11/4/09 | $3,900 |
| 14123 | Michael Jackson and Eddie Van Halen Guitar | 11/10/09 | $4,000 |
| 14688 | Malcom X Memorabilia | 2/8/10 | $2,200 |
| 5882 | Jimi Hendrix Memorabilia | 3/13/10 | $2,775 |
| 14043 | Michael Jackson Fedora | 3/20/10 | $4,600 |

The following items, purchased from Edwards Lowell Furrier and Fur Shop:

| Item No. | Description | Purchase Date | Purchase Price |
|---|---|---|---|
| 7063 | Mink Cashmere Cape | 11/14/09 | $800 |
| 53032 | Black and Red Cashmere Cape | 11/14/09 | $1,500 |
| 6477 | Mink Reversible Parka | 11/14/09 | $1,200 |

| Item No. | Description | Purchase Date | Purchase Price |
|---|---|---|---|
| 1500 | Black Fox Reversible | 11/14/09 | $1,500 |

2. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(c), Title 28 United Sates Code, Section 2461(c), and Title 21, United States Code, Section 853(p))**

RONALD C. MACHEN JR.
United States Attorney
Bar No. 447889

By: *Matt /s/*

MATT GRAVES
MICHAEL ATKINSON
Bar No. DC - 481052 (Graves)
Bar No. DC - 430517 (Atkinson)
Assistant United States Attorneys
Fraud & Public Corruption Section
555 4th Street, N.W., Room 5227
Washington, DC 20530